UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MALIK MCLEOD,

                          Plaintiff,

    -against-

YAHAIRA LLANO, JEAN PRINSTON, MADHU SHIBU, CITY OF NEW YORK, and JOHN AND JANE DOE 1 through 10, individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                          Defendants

    -and-

YAHAIRA LLANO Defendant/Third-Party Plaintiff,

    -against-

THE CITY OF NEW YORK Third-Party Defendant.

------------------------------------------------------------------------X

**_SECOND AMENDED COMPLAINT AND JURY DEMAND_**

ECF CASE

Docket No.
17-CV-6062

.

Plaintiff Malik McLeod, by his attorney John Paul DeVerna, Esq. of DeVerna Law, for his second amended complaint against the above Defendants alleges as follows:

## PRELIMARY STATEMENT

1. This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §1983 and 42 U.S. §1988 for the violation of his civil rights protected by the Fourth and Fourteenth Amendments of the United States Constitution.

2. The claim arises from an April 13, 2015 incident in which Defendants, acting under color of state law, unlawfully used excessive force on Plaintiff, while other Defendants unlawfully

1

failed to intervene in that use of excessive force, while other Defendants failed to properly train and supervise Officers thereby creating the conditions leading to Plaintiff's injuries.

3. Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

## VENUE

6. Venue is laid within the Eastern District of New York in that a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District. 28 U.S.C. § 1391 (b).

## PARTIES

7. Plaintiff Malik McLeod ("Mr. McLeod") resided at all times in Kings County, in the City and State of New York.

8. Defendant Yahaira Llano ("Llano") was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Llano was, at the time relevant herein, a Police Officer under Shield # 8492 in the 75th Precinct. Defendant Llano is sued in her individual and official capacity.

9. Defendant Jean Prinston ("Prinston") was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee

of the City of New York. Defendant Llano was, at the time relevant herein, a Police Officer under Shield # 8067 in the 75th Precinct. Defendant Prinston is sued in his individual and official capacity.

10. Sergeant Shibu Madhu, Tax No. 944754 ("Madhu") was, at all times here relevant, a Sergeant employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Madhu was, at the time relevant herein, a sergeant with Tax No. 944754 of the 75th Precinct. Defendant Madhu is sued in his individual and official capacity.

11. The Defendant City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.

12. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including police officers, detectives and supervisory officers as well as the individually named Defendants herein.

13. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

14. At all times relevant Defendants John and Jane Doe 1 through 10 were police officers, detectives, supervisors, policy makers and/or officials employed by the NYPD.  At this time, Plaintiff does not know the real names and/or shield number of Defendants John and Jane Doe 1 through 10.

15. At all times relevant herein, Defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

16. At all times here mentioned Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL CHARGES

17. On April 13, 2015, at approximately 9:10PM, Plaintiff was lawfully and innocently present at 272 Pennsylvania Avenue in Brooklyn, New York.

18. Defendants Llano and Prinston, approached Plaintiff on the street.

19. Defendants Llano and Prinston, ordered the Plaintiff to produce identification.

20. Plaintiff respectfully complied with the defendants' requests, and attempted to retrieve his identification.

21. Defendant Llano then grabbed Plaintiff by the shoulder, and closed fist punched Plaintiff in the face, causing substantial physical pain and bruising to Plaintiffs' face.

22. At no point did the Defendants observe Plaintiff put his hands on them.

23. Defendant Prinston had observed Defendant Llano's growing hostility toward Plaintiff and also observed Defendant Llano make a fist, cock her arm, ready to, and, in fact, strike Plaintiff, but did nothing to stop said conduct from occurring despite being aware of Defendant Llano's past, her intent, and despite being in close enough proximity to her and Plaintiff to do prevent such an attack.

24. Defendant Prinston failed to intervene in the excessive force used by Defendant Llano.

4

25. Defendant's Llano's conduct went far beyond what was necessary to gain adequate compliance from Plaintiff.

26. Defendant's striking Plaintiff was gratuitous, unreasonable and excessive.

27. Thereafter, defendants, including Llano and Defendant Prinston, then grabbed Plaintiff and placed him in handcuffs.

28. Plaintiff did not resist arrest.

29. Thereafter, defendants, including Llano, began to search Plaintiff without his permission or authority.

30. No contraband or anything of illegality was found on Plaintiff.

31. Plaintiff was transported to the precinct and then to central bookings in Brooklyn during which he repeatedly complained of being punched by Defendant Llano.

32. Plaintiff complained to Defendant Madhu about Defendant Llano's striking Plaintiff but Defendant Madhu failed to investigate and/or report said misconduct.

33. Based on information and belief, under the oath of office and the written rules and regulations promulgated by the NYPD, line officers and command personnel have an affirmative duty to intercede and prevent crimes and other misconduct committed by officers and to report such conduct whenever they become aware of it.

34. Defendant Madhu and City of New York, knew or should have had reason to know of Defendant Llano's temperament and propensity for violence yet failed to appreciate the risk she posed to the public and further failed to take adequate precautions to prevent Defendant's Llano's conduct as described herein.

35. Defendant Madhu, the City of New York, and the NYPD were knowingly and

deliberately indifferent to the possibility that its police officers, including Defendant Llano were wont to violate the constitutional rights of arrestees as described herein.

36. Defendant Llano failed to report her own misconduct and the force she utilized toward the Plaintiff.

37. Defendant Prinston failed to report Defendant Llano's misconduct, his own misconduct, and the force he observed taken by Defendant Llano.

38. Defendant Prinston attempted to cover up for Defendant Llano's conduct by asserting dishonestly that Plaintiff had attempted to flee from his encounter with the Defendants prior to being struck.

39. Defendant Prinston attempted to cover up for Defendant Llano's conduct by asserting Plaintiff had attempted to flee from his encounter with Defendant Llano.

40. Defendant Prinston attempted to cover up for Defendant Llano's by marking in his memo book Plaintiff was trying to get away.

41. Defendant Prinston attempted to cover up for Defendant Llano's conduct by asserting Plaintiff had resisted arrest by, among other things, flailing his arms.

42. Defendant Prinston attempted to cover up for Defendant Llano's conduct by asserting Plaintiff was struck by Defendant Llano while resisting being handcuffed.

43. Defendant Prinston attempted to cover up for Defendant Llano's conduct by providing false statements to the Civilian Complaint Review Board.

44. Defendant Prinston attempted to cover up for Defendant Llano's conduct by providing false statements at a subsequent Departmental Trial against Defendant Llano.

45. Despite Defendants Prinston and Llano omitting information that was required to be

6

provided, providing false statements in both official and unofficial departmental paperwork, providing false statements to the Civilian Complaint Review Board, and providing false statements at the Departmental Trial, no disciplinary action was taken, despite a policy that requires dismissal in such instances, absent exceptional circumstances.

46. In arraignments, Plaintiff plead guilty to the violation of Disorderly Conduct, P.L. 240.20.

47. During all of the events described, the individual defendants, including Llano, acted maliciously and with intent to injure Plaintiff.

48. At all times relevant hereto, defendants, including Llano, were involved in the decision to use excessive force or failed to intervene in the actions of their fellow officers when they observed them using excessive force on Plaintiff.

49. As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages: a violation of his rights pursuant to the Fourth and Fourteenth Amendment of the United States Constitution, physical injury, physical pain and suffering, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, and harm to reputation.

**FIRST CAUSE OF ACTION**
Excessive Force Under
42 U.S.C. § 1983

50. The above paragraphs are here incorporated by reference as though fully set forth.

51. The defendants, including Defendant's Llano violated the Fourth and Fourteenth Amendments because they used unreasonable force on the plaintiff without consent.

52. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the

damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
Failure to Intervene Under
42 .S.C. § 1983 Against Individual Defendants

53. The above paragraphs are here incorporated by reference as though fully set forth

54. Those Defendants, including Defendant Prinston, that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, where in a position to intervene, had a duty to intervene and prevent such conduct, but due to their intentional conduct or deliberate indifference declined or refused to do so.

55. Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

56. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CAUSE OF ACTION
Municipal Liability
42 U.S.C. § 1983 Against Individual Defendants

57. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

58. Defendant, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

59. Prior to April 13, 2015, the City had developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the

violations of Plaintiff's rights.

60. It was the policy and/or custom to supervise and discipline officers inadequately, including the officers use of force, failure to report, and providing false statement, thereby failing to discourage constitutional violations on the part of its police officers, but instead making violations more prevalent and more egregious on citizens, such as Plaintiff.

61. It was the policy and/or custom of the City to investigate inadequately and improperly civilian complaints of police misconduct.  Instead, acts of brutality were tolerated by the City.  The Internal Affairs Bureau (IAB) and the Civilian Complaint Review Board (CCRB) have substantially failed to investigate, deliberate, and discipline transgressors.  CCRB and/or IAB investigations of brutality rarely lead to administrative trials and when they do, and the charges are somehow sustained, the punishment is minimal, lacking any deterrent effect.  This has created an environment in which officers, among other thing transgressions, utilized an amount of force beyond that is necessary to effectuate an arrest.

62. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like plaintiff and the need for more or different training and discipline are policies, practices and customs of the City of New York and have caused police officers, including the officer defendants in this case, to believe that they can violate the rights of citizens with impunity, and that their fellow officers would conceal such conduct, including swearing falsely and committing perjury, and if found out not be severely punished all with the foreseeable result that officers are more likely violate the constitutional rights of citizens.

63. The City has been on notice for more than a generation that brutality is widespread and that particular reforms need to be implemented.  From reform-minded Commissioner Patrick

9

Murphy to the Mollen Commission twenty-five years later, the City has been repeatedly cautioned that a systemic tolerance for brutality flourishes throughout the NYPD. Indeed, years before said violation was perpetratred upon Plaintiff, the Mollen Commission report noted, "This tolerance, or willful blindness, extends to supervisors as well. This is because many supervisors share the perception that nothing is really wrong with a bit of unnecessary force and because they believe that this is the only way to fight crime today." Mollen Comm. Report, at 49; The City of New York Commission to Combat Police Corruption, *passim*.

64. Prior to April 13, 2015, police officers of the City of New York have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct. When attempts at subterfuge were found out, Police Officers were inadequately held to account which fostered a permissive attitude toward violence against citizens, which was the driving force behind the injuries inflicted upon individuals, including Plaintiff.

65. This allowance of deceit, in the wake of misconduct, is a custom so deeply ingrained in the members of the New York City Police Department so as to constitute the actual policy of the City of New York.

66. Both a cause and symptom of this policy was the City's failure to appropriately charge and adequately discipline officers who make false statements, in contravention of P.G. §203-08, which states, "The intentional making of a false statement is prohibited, and will be subject to disciplinary action, up to and including dismissal [and further] [i]ntentionally making a false official statement regarding a material matter will result in dismissal from the Department, absent exceptional circumstances." The resulting tacit allowance caused a violation of Plaintiff's rights.

10

67. Further, it is believed the City has maintained no system or an inadequate system of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers. This failure to identify and track such officers, including the defendant officers, or to discipline, more closely supervise, or retrain such officers causes New York City police officers to believe that they can engage in misconduct, secure in the knowledge that their fellow officers will neither intervene, nor give evidence against them.

68. The City has been deliberately indifferent to the need for more or different training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers. The City has failed to properly sanction or discipline officers who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other New York City police officers, thereby causing and encouraging New York City police officers, including the individual defendant officers in this case, to violate the rights of citizens such as Plainitff.

69. The City, prior to and at the time of this incident, was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers who practice deceit or cover for those who do and was deliberately indifferent to that need. The City of New York Commission to Combat Police Corruption, 16th Annual Report, at 83.

70. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff.

71. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the

11

constitutional violations suffered by the plaintiff as alleged herein.

72. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

73. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the plaintiff's constitutional rights.

74. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of the plaintiff's constitutional rights.

75. The acts complained of deprived the plaintiff of his right:

   a) Not to be deprived of liberty without due process of law;

   b) To be free from seizure and arrest not based upon probable cause;

   c) To be free from excessive force;

   d) Not to have summary punishment imposed upon him; and

   e) To receive equal protection under the law.

76. Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene

77. Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

78. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### **FOURTH CAUSE OF ACTION**
Failure to Train Supervise Manage and/or Control under
42 U.S.C. § 1983 Against Individual Defendants

79. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

80. Defendants the City of New York and New York City Police, as well as Defendant Madhu, have had a duty to supervise, manage, oversee, maintain control and or train their employees, servants, officer's police officers and/or agents including but not limited to Defendants Llano, Defendant Prinston, Defendant Madhu and John and Jane Does 1 through 10.

81. Defendants Llano, Defendant Prinston, John and Jane Does 1 through 10 were employees, servants, officers, police officers and or agents of the defendants the City of New York and the New York City Police Department and Defendant Madhu .

82. Defendants the City of New York and New York City Police Department and Defendant Madhu  are negligent in that they failed their duty to instruct, supervise, manage oversee, maintain control, and/or train their employees, servant officers police officers and or agents, particularly Defendants Llano, Defendant Prinston, and John and Jane Does 1 through 10 so that the Defendants, their employees, agents officers police officers and/or servants would be aware that it was unlawful to unlawfully and forcibly stop, assault, hit, strike, batter, harass and then failed to provide or cause to be provided medical care/treatment for the injuries plaintiff sustained therefrom and to cause directly and proximately therefrom injuries/damages to the Plaintiff including but not limited to mental anguish, shock, pain, and suffering, emotional distress (intention and negligent) , physiological trauma, post-traumatic stress disorder, bruising, swelling, contusion, swelling and black and blue bruising to the face eye as well as and otherwise violate

the constitutional rights of the Plaintiff herein, to further subject the Plaintiff to cruel and inhumane treatment/excessive force and further causing plaintiffs to incur and to continue to incur, plain and suffering.

83. It is believed that Defendants the City of New York and New York City Police, as well as Defendant Madhu received complaints about the conduct of Defendant Llano and Defendants and other officers in the 75th precinct, knew about past complaints, aberrant behavior, and disciplinary infractions, or, in the exercise of due diligence, would have perceived that these officers had conduct and disciplinary problems that posed a pervasive and unreasonable risk of harm to Plaintiff

84. Defendants the City of New York and New York City Police, as well as Defendant Madhu knew, or in the exercise of due diligence would have known that the conduct of Defendant Llano and Defendant displayed toward Plaintiff was likely to occur..

85. It is believed Defendants the City of New York and New York City Police, as well as Defendant Madhu failed to take preventative and remedial measures to guard against the brutality and cover up committed by Defendant Madhu, Defendant Llano, and Defendant Prinston. Had they taken appropriate action, Plaintiff would not have been injured.

86. Defendants City of New York and New York Police Department, and Defendant Madhu's negligence was a direct and proximate cause of the hard/damages/injures visited upon the Plaintiff

87. Further as a direct and proximate result of the Defendants the City of New York and the New York City Police Departments, and Defendant Madhu's negligence, plaintiff suffered and continues to suffer injuries and/or damages.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a) In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b) Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c) Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d) Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

e) Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 26, 2018
New York, New York

Respectfully submitted,

**JOHN PAUL DEVERNA**
Counsel for the Plaintiff

By: John Paul DeVerna (JD4332)
DeVerna Law
305 Broadway, 14th Floor
New York, NY 10007
(212) 321-0025 (office)
(212) 321-0024 (fax)