UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MALIK MCLEOD,<br><br>Plaintiff,<br><br>-against-<br><br>YAHAIRA LLANO, JEAN PRINSTON, MADHU SHIBU, CITY OF NEW YORK, and JOHN AND JANE DOE 1 through 10, individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),<br><br>Defendants, | 17-cv-6062 (ARR) (SMG)<br><br>**Not for electronic or print publication**<br><br>**Opinion & Order** |
| YAHAIRA LLANO,<br><br>Defendant/Third-Party Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK,<br><br>Third-Party Defendant. | |

ROSS, United States District Judge:

Plaintiff, Malik McLeod, brings this civil-rights action under 42 U.S.C. § 1983 against the City of New York ("the City"), Officer Jean Prinston, and Lieutenant Shibu Madhu, as well as Officer Yahaira Llano and several unnamed employees of the New York City Police Department ("NYPD").[1] His claims arise out of an April 13, 2015 incident, in which he was struck in the face by Officer Llano. McLeod is alleging several violations of his Fourth and

---

[1] I will refer to the City, Officer Prinston, and Lieutenant Madhu as the "City defendants," as they are represented by the City, and I will call all defendants other than the City the "individual defendants."

1

Fourteenth Amendment rights. The City defendants have moved to dismiss three of McLeod's claims: (1) his failure to intervene claim against Officer Prinston, (2) his failure to supervise, train, manage and/or control subordinates claim against Lieutenant Madhu, and (3) his *Monell* claim against the City. Officer Llano, who is not being represented by the City, has brought a third-party claim for prospective indemnification pursuant to New York's General Municipal Law § 50-k. The City has also moved to dismiss Officer Llano's third-party indemnification claim. For the reasons that follow, the City defendants' motion to dismiss McLeod's claims is granted, while the City's motion to dismiss Officer Llano's third-party indemnification claim is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of the City defendants' motion to dismiss McLeod's claims, I assume the truth of the factual allegations contained in McLeod's complaint.[2] On the evening of April 13, 2015, Officers Llano and Prinston approached McLeod, who was "lawfully and innocently present at 272 Pennsylvania Avenue in Brooklyn, New York." Second Am. Compl. ¶¶ 17–18, ECF No. 38 ("SAC"). The officers asked McLeod to produce identification. *Id.* ¶ 19. While McLeod was retrieving his identification, Officer Llano "grabbed Plaintiff by the shoulder, and closed fist punched Plaintiff in the face, causing substantial physical pain and bruising to Plaintiff['s] face." *Id.* ¶¶ 20–21. According to McLeod, Officer Prinston "observed Defendant Llano's growing hostility toward Plaintiff and also observed Defendant Llano make a fist, cock her arm, ready to, and, in fact, strike Plaintiff, but did nothing to stop said conduct from occurring despite being aware of Defendant Llano's past [and] her intent." *Id.* ¶ 23. McLeod

---

[2] I do not address the factual allegations in Officer Llano's third-party complaint, *see* Amended Answer ¶¶ 40–64, ECF No. 37, because they contradict the factual allegations in McLeod's complaint and are not relevant at this point in the litigation.

alleges that Officer Prinston was close enough to prevent the punch. *Id.* The individual defendants then handcuffed plaintiff and transported him to the police precinct and then to central bookings in Brooklyn. *Id.* ¶¶ 27, 31.

While McLeod was being transported, "he repeatedly complained of being punched by Defendant Llano." *Id.* ¶ 31. McLeod specifically complained to Lieutenant Madhu about Officer Llano's conduct, but Lieutenant Madhu "failed to investigate and/or report said misconduct." *Id.* ¶ 32. McLeod contends that Lieutenant Madhu and the City "knew or should have had reason to know of Defendant Llano's temperament and propensity for violence." *Id.* ¶ 34; *see also id.* ¶ 83 ("It is believed that Defendants the City of New York and New York City Police, as well as Defendant Madhu received complaints about the conduct of Defendant Llano and Defendants and other officers in the 75th precinct, knew about past complaints, aberrant behavior, and disciplinary infractions, or, in the exercise of due diligence, would have perceived that these officers had conduct and disciplinary problems . . . ."). Officer Prinston also failed to report Officer Llano's misconduct. *Id.* ¶ 37. Further, Officer Prinston attempted to protect Officer Llano by, *inter alia*, (1) reporting "dishonestly" that McLeod had attempted to flee from the scene, (2) claiming that Officer Llano struck McLeod because he was resisting arrest, and (3) "providing false statements to the Civilian Complaint Review Board" and "at a subsequent Department Trial" against Officer Llano. *Id.* ¶¶ 38–44. No disciplinary action was taken against Officers Prinston or Llano for the alleged cover-up. *Id.* ¶ 45.

At his arraignment, McLeod pled guilty to disorderly conduct. *Id.* ¶ 46. On October 17, 2017, McLeod initiated this action against Officer Llano and "John and Jane Doe 1 through 10" (ECF No. 1). Officer Llano answered McLeod's complaint on February 7, 2018 (ECF No. 13), and she filed an amended answer on March 8, 2018 (ECF No. 17), which included a third-party

claim for indemnification against the City (*id.* ¶¶ 40–46). McLeod filed his first amended complaint on March 18, 2018 (ECF No. 20), which added Officer Prinston, Lieutenant Madhu, and the City as defendants (*id.*). On October 3, 2018, the City defendants requested a pre-motion conference regarding their anticipated motion to dismiss McLeod's first amended complaint against the City defendants, as well as Officer Llano's third-party claim against the City (ECF No. 34). On October 17, 2018, I issued an order finding a pre-motion conference unnecessary, granting McLeod leave to file a second amended complaint, and granting Officer Llano leave to amend her third-party claim against the City. On October 26, 2018, McLeod filed his SAC, and Officer Llano filed a second amended answer with an amended third-party claim against the City (ECF No. 37).[3] In his SAC, McLeod asserts four federal causes of action[4]: (1) excessive force by the defendants, namely Officer Llano (SAC ¶¶ 50–52),[5] (2) failure to intervene by the individual defendants, namely Officer Prinston (*id.* ¶¶ 53–56), (3) failure to train, supervise, manage and/or control by the defendants, namely the City and Lieutenant Madhu (*id.* ¶¶ 79–87), and (4) constitutional violations resulting from the "customs, policies, usages, practices, procedures and rules of the City" (*id.* ¶¶ 57–78). On November 30, 2018, the City defendants moved to dismiss McLeod's claims against them, as well as Officer Llano's third-party indemnification claim against the City (City Defs.' Br., ECF No. 43). McLeod and Officer Llano oppose the motion to dismiss (McLeod Opp'n, ECF No. 45-2; Llano Opp'n, ECF No. 44). For the following reasons, I

---

[3] On November 26, 2018, Officer Llano filed a third amended answer to the SAC (ECF No. 40). In her third amended answer, she does not assert a third-party indemnification claim against the City. It is clear from the parties' briefing materials that Officer Llano still intends to assert such a claim. *See, e.g.*, City Defs.' Br. 18 n.3, ECF No. 43; Llano Opp'n 2 n.1, ECF No. 44; McLeod Opp'n 17, ECF No. 45-2. Thus, for the purposes of this motion, I rely on the third-party claim articulated in her second amended answer.

[4] McLeod concedes that he is not asserting any state-law claims. *See* McLeod Opp'n 17.

[5] The defendants do not represent Officer Llano in this action and are not moving to dismiss McLeod's claim of excessive force against Officer Llano.

4

grant the City defendants' motion to dismiss McLeod's claims, and I deny the motion to dismiss Officer Llano's third-party indemnification claim.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When reviewing a defendant's motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)). As long as the plaintiff alleges sufficient factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion will be denied. *Iqbal*, 556 U.S. at 678. However, the court is not required to accept as true conclusory allegations or "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Likewise, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* A plaintiff must assert "specific facts or circumstances" in support of his claims; "[a] complaint which [is] . . . unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (quoting *Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995)).

## DISCUSSION

I. **The City defendants' motion to dismiss McLeod's failure to intervene claim against Officer Prinston is granted because Officer Prinston did not have a realistic opportunity to prevent the assault.**

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law

enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). As such, an officer who "observes [that] excessive force is being used or has reason to know that it will be" can be held liable for failing to intercede to stop the constitutional violation from occurring. *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 21 (2d Cir. 2012) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)). However, liability will not attach simply because another officer is present at the time of a violation; instead, the plaintiff must demonstrate the officer had "a realistic opportunity to intervene to prevent the harm from occurring." *Id.* (quoting *Anderson*, 17 F.3d at 557); *see also Merrill v. Schell*, 279 F. Supp. 3d 438, 444 (W.D.N.Y. 2017) ("Whether an officer had a realistic opportunity to intervene depends on several factors, including the number of officers present, their proximity to the situation, the environment in which they acted, the nature of the assault, and, often most important, the assault's duration." (citing *Figueroa v. Mazza*, 825 F.3d 89, 107 (2d Cir. 2016))). While the duration of the assault "will always be relevant and will frequently assume great importance" in the analysis, there is no "hard-and-fast temporal cutoff" that determines the availability of a failure to intervene claim in any given circumstance. *Figueroa*, 825 F.3d at 107. Instead, the court must "evaluate each case on its own facts" to determine whether an officer could have intervened and yet failed to do so. *Id.*

Here, the City defendants argue that McLeod "cannot plausibly suggest that Officer Prinston had a reasonable opportunity to intervene" because McLeod alleges that "Officer Llano punched him a single time—an act that takes, at most, a matter of seconds." City Defs.' Br. 6. McLeod first claims that Officer Prinston had a duty to intercede before the assault occurred because "Defendant Prinston was aware of Defendant Llano's propensity for violence toward citizens," and "[f]ully aware of [Llano's] past, Defendant Prinston . . . observed Defendant

Llano's [growing] hostility toward Plaintiff." McLeod Opp'n 7 (citing SAC ¶ 23). McLeod's SAC contains no facts to support his claim that Officer Prinston was aware of Officer Llano's propensity for violence. Even if Officer Prinston was aware of this propensity, however, "[McLeod has] cited to no caselaw suggesting that mere knowledge of an officer's prior use of excessive force is sufficient to provide his fellow officers with both a reason to know that constitutional harm would be used and the opportunity and the means to stop it in all subsequent circumstances." *Holloran v. Duncan*, 92 F. Supp. 3d 774, 796 (W.D. Tenn. 2015).

The facts as alleged in McLeod's SAC do not demonstrate that Officer Prinston had a realistic opportunity to prevent Officer Llano's use of force. McLeod suggests that Officer Prinston had such an opportunity when Officer Llano "grabbed [McLeod] by the shoulder," when she "raised and cocked her arm," and "when she began to . . . propel her arm forward toward [McLeod's] face." McLeod Opp'n 7–8 (citing SAC ¶ 23). However, it is well-established that an officer is not liable for failing to intervene if the use of force is "sudden and brief." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 428 n.9 (N.D.N.Y. 2009) (quoting *Brown v. Mravintz*, No. 04-CV-30J, 2006 WL 3717417, at *6 (W.D. Pa. Dec. 14, 2006)). In *O'Neill v. Krzeminski*, for example, the Second Circuit held that an officer could not be held liable for failing to intervene in a beating because "[t]he three blows were struck in such rapid succession that [the defendant] had no realistic opportunity to attempt to prevent them." 839 F.2d 9, 11 (2d Cir. 1988). The court held that the beating was too short "to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator." *Id.* at 11–12. Thus, "[w]here the alleged force consists of a single push or a 'rapid succession' of blows, courts have found that the officer did not have a realistic opportunity to intervene." *Elufe v. Aylward*, No. 09-CV-458 (KAM)(LB), 2011 WL 477685, at *9 (E.D.N.Y. Feb. 4, 2011) (citing *O'Neill*, 839 F.2d

7

at 11–12)); *see also Jackson v. City of White Plains*, No. 05-cv-0491 (NSR), 2015 WL 4739762, at *8 (S.D.N.Y. Aug. 7, 2015) (holding that a police officer who was in close proximity to the plaintiff did not have a realistic opportunity to intervene where another officer "punched [the plaintiff], spoke one short sentence, and punched him again"); *Sash v. United States*, 674 F. Supp. 2d 531, 545 (S.D.N.Y. 2009) (finding that the defendant was not liable for failing to intervene where "the entire incident took less than thirty seconds"); *Mowry v. Noone*, No. 02-CV-6257FE, 2004 WL 2202645, at *4 (W.D.N.Y. Sept. 30, 2004) (reasoning that the defendant did not have sufficient time to intervene when the alleged use of force was "a single kick to the head"). In this case, there is no dispute that Officer Llano's use of force constituted a single punch, despite McLeod's attempt to describe it as a series of actions. *See* SAC ¶ 23 ("Defendant Prinston . . . observed Defendant Llano make a fist, cock her arm, ready to, and, in fact, strike Plaintiff."). This use of force is simply too "sudden and brief" to give rise to failure to intervene liability. *Cusamano*, 604 F. Supp. 2d at 428 n.9. Accordingly, McLeod's claim against Officer Prinston is dismissed. *See also Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 327 (S.D.N.Y. 2006) (granting a motion to dismiss plaintiff's failure to intervene claims where the alleged use of force was too rapid for the defendants to have a realistic opportunity to intervene), *aff'd in relevant part*, 461 F. App'x 18 (2d Cir. 2012); *Johnson ex rel. Johnson v. County of Nassau*, No. 09-CV-4746(JS)(MLO), 2010 WL 3852032, at *3–4 (E.D.N.Y. Sept. 27, 2010) (same).

II. **The City defendants' motion to dismiss McLeod's failure to supervise claim against Lieutenant Madhu is granted because McLeod has not adequately pleaded supervisory liability.**

To state a claim for supervisory liability in a § 1983 action, a plaintiff must allege that the supervisory defendant was "personally involved" in the violation by showing that: "(1) the official participated directly in the violation; (2) the official, after learning of the violation, failed

to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in supervising subordinates who caused the unlawful condition or event; or (5) the official exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring." *White v. Schriro*, No. 16 Civ.6769 (PAE) (JCF), 2017 WL 3268202, at *5 (S.D.N.Y. July 31, 2017) (first citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); then citing *Washington v. Kelly*, No. 03 Civ. 4638, 2004 WL 830084, at *3 (S.D.N.Y. Apr. 13, 2004)).[6] Here, McLeod claims that the SAC "allow[s] the Court to draw the inference" that Lieutenant Madhu is liable under (2), (4), and (5). McLeod Opp'n 10.

### A. Failure to Remedy the Wrong

McLeod argues that Lieutenant Madhu was "personally involved in the deprivation of Plaintiff's constitutionally protected interests" because, "[d]espite having been apprised of Defendant Llano's tendency to utilize excessive force, . . . Defendant Madhu did nothing to end the practice." McLeod Opp'n 11. To the extent that McLeod's personal involvement claim is based on Lieutenant Madhu's "fail[ure] to investigate and/or report" Office Llano's "striking" of McLeod, SAC ¶ 32, this argument fails. *See Hernandez v. Daniels*, No. 14-cv-5910 (AJN), 2016 U.S. Dist. LEXIS 125659, at *8 (S.D.N.Y. Sept. 14, 2016) ("District courts in this Circuit have repeatedly held that a supervisor who fails to respond to or investigate a report of a constitutional violation does not become 'personally involved' for purposes of supervisor liability unless the constitutional violation is *ongoing*." (emphasis added)). McLeod's SAC also falls short of alleging that Lieutenant Madhu was aware of an ongoing constitutional violation, because the

---

[6] For the purposes of this motion, I assume that all five *Colon* factors survived *Iqbal*. *See* City Defs.' Reply 4 n.1, ECF No. 46 (acknowledging that district courts in this Circuit are split as to whether *Iqbal* eliminated the second, fourth, and fifth *Colon* factors).

SAC's assertion that Lieutenant Madhu "knew or should have had reason to know of Defendant Llano's temperament and propensity for violence," SAC ¶ 34, is too conclusory to demonstrate personal involvement. *See* Sec. II.B, *infra*.

### B. Gross Negligence

"The standard of gross negligence is satisfied where the plaintiff establishes that the defendant-supervisor was aware of a subordinate's prior substantial misconduct but failed to take appropriate action to prevent future similar misconduct before the plaintiff was eventually injured." *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014). McLeod alleges that Lieutenant Madhu was grossly negligent because he "knew or should have had reason to know of Defendant Llano's temperament and propensity for violence." SAC ¶ 34; *see also id.* ¶ 83 ("It is believed that . . . Defendant Madhu received complaints about the conduct of Defendant Llano and Defendants and other officers in the 75th precinct, knew about past complaints, aberrant behavior, and disciplinary infractions, or, in the exercise of due diligence, would have perceived that these officers had conduct and disciplinary problems that posed a pervasive and unreasonable risk of harm to Plaintiff."). "[V]ague and conclusory allegation[s] . . . do[] not suffice to state a claim for supervisory liability." *Pane v. Town of Greenburgh*, No. 07 Civ. 3216 (LMS), 2010 WL 11464846, at *9 n.7 (S.D.N.Y. July 19, 2010), *motion for reconsideration granted in non-pertinent part by* 2010 WL 11464845 (S.D.N.Y. Nov. 24, 2010); *see also Iqbal*, 556 U.S. at 678. McLeod's statements regarding Lieutenant Madhu's knowledge are the type of conclusory allegations that fall short of stating a claim for relief. *See Gantt v. Ferrara*, No. 15-CV-7661 (KMK), 2018 WL 4636991, at *7 (S.D.N.Y. Sep. 27, 2018) (finding plaintiff's allegation that the supervisory defendant had "knowledge of [his subordinate's] prior use of excessive force" because of "civil complaints and lawsuits" insufficient to state a claim for

supervisory liability); *Guillory v. Cuomo*, No. 9:14-CV-0971 (MAD/RFT), 2014 WL 11173632, at *4 (N.D.N.Y. Dec. 2, 2014) ("The mere fact that other incidents . . . may have occurred . . . does not mean that the supervisory defendants were on notice of them, that they tolerated [assaults], or that they were otherwise personally involved in the violation that forms the basis of [the] plaintiff's excessive-force claim." (quoting *Green v. Herbert*, 677 F. Supp. 2d 633, 637 (W.D.N.Y. 2010))); *Pane*, 2010 WL 11464846, at *9 (holding that plaintiff's "general allegation[]" that "*[i]t is believed* that the [police department] knew about past complaints, aberrant behavior, and disciplinary infractions" did not demonstrate supervisory liability (emphasis in original)). Accordingly, plaintiff has failed to state a claim for supervisory liability based on gross negligence.

### C. Deliberate Indifference

"In order for a deliberate indifference claim to be viable, a plaintiff must allege that the supervisor was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed." *Stamile v. County of Nassau*, No. CV 10-2632 (AKT), 2014 U.S. Dist. LEXIS 39320, at *16 (E.D.N.Y. Mar. 25, 2014). McLeod's deliberate indifference claim rests on the same allegations as his gross negligence claim, i.e., that Lieutenant Madhu was aware of Officer Llano's propensity to use excessive force and failed to take action. *See* McLeod Opp'n 12–13. McLeod's deliberate indifference claim therefore fails for the same reasons as his gross negligence claim. Thus, McLeod's supervisory liability claim against Lieutenant Madhu is dismissed.

### III. The City's motion to dismiss the § 1983 claims against it is granted because the factual allegations in plaintiff's complaint do not plausibly allege a *Monell* claim.

In order to sustain a § 1983 claim against a municipal defendant, a plaintiff must allege facts sufficient to show the existence of an official policy or custom and a direct causal

connection between that policy or custom and the deprivation of the plaintiff's constitutional rights. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 692 (1978). There are four ways to demonstrate the existence of a policy or custom: (1) a formal policy; (2) actions or decisions taken by a municipal official with final policymaking authority; (3) "a practice so consistent and widespread that . . . [it] constitutes a custom or usage"; or (4) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (citation omitted). In this case, McLeod alleges *Monell* liability based on the existence of a widespread practice and the City's failure to train or supervise its employees.

### A. Widespread Practice

McLeod claims that the City developed a widespread practice in which "officers would hide a fellow officer's misconduct and then not be held to account for their deceit." McLeod Opp'n 14. As evidence, McLeod first points to the incident described in the SAC, i.e., that "after an exercise of excessive force by Defendant Llano, Defendant officers intentionally and repeatedly made false statements in their paperwork, in connection with a subsequent investigation, and at Departmental Trial yet suffered no discipline, in contravention of [Patrol Guide] § 203-08, a pattern which was the driving force behind Plaintiff's own constitutional violation and the next citizen's violations." *Id.* (citing SAC ¶¶ 45, 66). The case law is clear, however, that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional

activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Hayes v. Perotta*, 751 F. Supp. 2d 597, 601 (S.D.N.Y. 2010) (noting that a "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]" (alteration in original) (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008))). Thus, plaintiff's allegations regarding the incident with Officer Llano do not give rise to a widespread practice claim.

McLeod then suggests that he has sufficiently pleaded the existence of a widespread practice because the SAC "provides examples of similar and repeated occurrences by including government reports," including an annual report by the Commission to Combat Police Corruption, which "points out the City Defendant[s'] need to address those who practice deceit or cover for those who do." McLeod Opp'n 14 (citing SAC ¶ 69). "'Research reports may be used to bolster *Monell* claims, but only if those reports are sufficiently connected to the specific facts of the case' and are of relatively recent vintage." *Isaac v. City of New York*, No. 16-CV-4729 (KAM), 2018 U.S. Dist. LEXIS 132995, at *51 (E.D.N.Y. Aug. 6, 2018) (quoting *Gomez v. City of New York*, No. 16-CV-1274 (NGG) (LB), 2017 WL 1034690, at *11 (E.D.N.Y. Mar. 16, 2017)). In this case, the SAC does not include any factual allegations regarding the "similar and repeated occurrences" supposedly contained in the government reports. McLeod Opp'n 14. McLeod has therefore failed to sufficiently connect the reports to his specific allegations. Accordingly, his reliance on the reports is unavailing, and his claim that "police officers of the City of New York have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately

give evidence as to misconduct," SAC ¶ 64, is simply too conclusory to give rise to liability under *Monell*. *See Bradley v. City of New York*, No. 08-CV-1106 (NGG), 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("[C]onclusory . . . language" regarding the City's policies "is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused [the constitutional violation].").

### B. Failure to Train or Supervise

McLeod's failure to train or supervise claim is based on two alleged policies: "(1) a failure to punish those who are intentionally deceitful in disregard of official policy, and (2) a tacit allowance . . . of those who perpetrate brutality." McLeod Opp'n 16. To prevail on a *Monell* claim based on a municipality's failure to train, supervise, or discipline its employees, a plaintiff must show that the failure "amounts to deliberate indifference to the rights of persons with whom [municipal employees] will come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 534 (S.D.N.Y. 2012). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* at 61 (citing *Brown*, 520 U.S. at 407). As a result, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Brown*, 520 U.S. at 409). Likewise, a failure to supervise or discipline claim is premised on an allegation that the "need for more or better supervision . . . was

14

obvious," and that the City "made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct.'" *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). Before a municipality can be held liable for a failure to train or supervise, the plaintiff must demonstrate three things: (1) "a policymaker knows 'to a moral certainty' that his or her employees will confront a given situation;" (2) the situation presents the employee with "a difficult choice of the sort that training or supervision will make less difficult or . . . there is a history of employees mishandling the situation;" and (3) that the wrong decision "will frequently cause the deprivation of a citizen's constitutional rights." *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *19 (S.D.N.Y. Mar. 26, 2015) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007)).

McLeod fails to allege facts that demonstrate a failure to train or supervise. McLeod argues that the first requirement is met because "City Defendant knew to a moral certainty an offending officer would utilize an excessive amount of force in front of another witnessing officer and then that officer would be faced with the decision to speak out or remain silent." McLeod Opp'n 16 (citing SAC ¶¶ 63–64). To support his claim of alleged knowledge, McLeod cites to the 1994 Mollen Commission report, which found that a "tolerance [for brutality], or willful blindness, extends to supervisors as well [as supervisees]. . . . because many supervisors share the perception that nothing is really wrong with a bit of unnecessary force and because they believe that this is the only way to fight crime today." SAC ¶ 63 (quoting Mollen Commission Report, at 49). McLeod then argues that he has satisfied the second requirement, i.e., a history of employees mishandling the situation, by citing to the Commission to Combat Police Corruption report, which reveals "a history of witnessing officers choosing to remain silent when they had

15

witnessed offending conduct." McLeod Opp'n 16 (citing SAC ¶ 69). As discussed above, McLeod's SAC lacks specific factual allegations of prior similar constitutional violations, and a claim of deliberate indifference requires more than conclusory findings from research reports. *See Mosca v. City of New York*, No. 17-CV-4327 (SJF)(SIL), 2018 WL 3151704, at *5 (E.D.N.Y. Apr. 24, 2018) ("[T]he Complaint is devoid of any allegations of prior similar constitutional violations[, and] [t]herefore, Plaintiff cannot plausibly allege that the Municipal Defendants acquired sufficient actual or constructive notice as to be deliberately indifferent as to the need for further screening of potential NYPD employees."), *adopted by* 2018 WL 2277837 (May 18, 2018).

Additionally, McLeod fails to point to a "specific deficiency" in the City's training programs that could plausibly have caused the alleged constitutional violations. Following *Twombly* and *Iqbal*, courts require that plaintiffs point to a "specific deficiency in the municipality's training." *Tieman*, 2015 WL 1379652, at *22; *see also Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) (summary order) ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim.") (citation omitted)). McLeod alleges that the City inadequately supervised and disciplined its officers on the "use of force, failure to report, and provi[sion of] false statement[s]," as well as inadequately investigated civilian complaints of police misconduct. SAC ¶¶ 60–61. These "unsupported conclusory allegation[s]" are insufficient to demonstrate deliberate indifference. *See Johnson v. City of New York*, No. 06 CV 09426, 2011 WL 666161, at *4 (S.D.N.Y. Feb. 15, 2011) (noting that plaintiff's *Monell* allegations failed because they did not "identify procedural manuals or training guides, nor d[id] they highlight relevant particular

aspects of police training or supervision" (citation omitted)). Because McLeod does not adequately allege a specific deficiency in the City's training program, his *Monell* claim must also be dismissed for failing to state a causal connection between the alleged policy and constitutional injury. *See Amnesty Am.*, 361 F.3d at 129 (noting that in order to make out a failure to train claim, plaintiffs must "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation" (quoting *City of Canton*, 489 U.S. at 391)).

IV. **The City's motion to dismiss Officer Llano's third-party indemnification claim is denied because I find it appropriate to exercise supplemental jurisdiction over this claim.**

As the City concedes, this court has discretion to exercise supplemental jurisdiction over Officer Llano's indemnification claim. *See* City Defs.' Br. 20–21; *see also Harris v. Rivera*, 921 F. Supp. 1058, 1062 (S.D.N.Y. 1995) ("Federal courts have exercised supplemental jurisdiction over claims for indemnification when these claims were 'tightly interwoven with federal law issues the lawsuit presents.'" (quoting *Turk v. McCarthy*, 661 F. Supp. 1526, 1536 (E.D.N.Y. 1987))). A municipal employee's right to indemnification is decided under New York General Municipal Law § 50-k. *See* City Defs.' Br. 19. The Corporation Counsel is responsible for making indemnification decisions, and these decisions are generally challenged in a proceeding brought pursuant to Article 78 of the New York Civil Practice Law and Rules. *See id.* The City argues that I should decline to exercise supplemental jurisdiction over Officer Llano's indemnification claim because New York State courts have not determined whether a challenge to the City's indemnification decision *must* be brought in an Article 78 proceeding, and "[t]he silence of state courts on this issue, 'coupled with several other open questions concerning the application of Section 50-k, raise the sort of "novel and complex issues" of New York State law

that are best suited for New York courts to decide.'" *Id.* at 21 (quoting *Cucchiara v. Hollingsworth*, No. 15-CV-314 (KBF), 2016 WL 6068193, at *8 (S.D.N.Y. Oct. 14, 2016)). As courts in this Circuit have held, however, "nothing in G.M.L. § 50-k or case law compels a ruling that Article 78 provides the exclusive method for City employees to establish a claim for representation or indemnification or to contest the Corporation Counsel's rejection of a demand for such relief." *Musso v. City of New York*, No. 05-CV-2511 (RRM)(JO), 2010 WL 11530907, at *4 (E.D.N.Y. Mar. 30, 2010) (quoting *Banks v. Yokemick*, 144 F. Supp. 2d 272, 277 (S.D.N.Y. 2001)); *see also Cucchiara*, 2016 WL 6068193, at *8 (declining to exercise supplemental jurisdiction but noting that "the weight of opinion among courts in this District is that defendants may assert claims for representation and indemnification for the first time via third-party claims in federal court" (internal quotation marks and citation omitted)).

The City then argues that Officer Llano's indemnification claim should be dismissed because it is premature. *See* City Defs.' Br. 22. Indemnification claims "do not generally ripen until a judgment in the underlying action is paid." *Hanson v. City of New York*, No. No. 15-CV-1447 (MKB), 2018 WL 1513632, at *23 (quoting *Harris*, 921 F. Supp. at 1062)). In addressing third-party indemnification claims asserted before a judgment, some courts in this Circuit have found it appropriate to dismiss the cross-claim on ripeness grounds and require the plaintiff to file a state-court suit after judgment, while others "have permitted defendants to assert indemnification cross-claims before they are technically ripe in order to promote fairness and judicial economy." *Id.* (internal quotation marks and citation omitted); *see also Harris*, 921 F. Supp. at 1062 ("[F]or the sake of fairness and judicial economy, the CPLR allows third-party actions to be commenced in certain circumstances before they are technically ripe, so that all parties may establish their rights and liabilities in one action." (quoting *Mars Assocs. v. N.Y.C.*

18

*Educ. Const. Fund*, 513 N.Y.S.2d 125, 133 (App. Div. 1987))). In this case, I find that considerations of fairness and judicial economy weigh in favor of exercising supplemental jurisdiction over Officer Llano's indemnification claim. I do not find compelling the City's argument that "there is no possibility of harm to defendant Llano if her third-party claim is dismissed at this stage" because she can bring her indemnification claim in state court "should the need arise after litigation is complete." City Defs.' Br. 23. Rather, I agree with Officer Llano that because her "indemnification claim[] involve[s] the very same facts and circumstances at issue in the underlying action against her," dismissing her claim "would cause a duplication of efforts since the parties would need to make a showing of the very same evidence in a separate action." Llano Opp'n 5–6; *see also Banks*, 144 F. Supp. 2d at 285 ("[T]he City's proposal [to require the defendant to challenge the City's indemnification decision in a separate state court proceeding] . . . . places an additional burden on [the defendant] to expend resources in a new filing before another court whose own time and judicial resources would be spent becoming acquainted with the matter and otherwise duplicating efforts already expended here."). The City argues that if I dismiss the municipal liability claims against it, it will be "unduly prejudiced if it is forced to remain a party to this litigation solely to defend[] a premature cross-claim for indemnification." City Defs.' Reply 9. Because the indemnification claim does not ripen until judgment, however, I "see[] no reason to adjudicate the indemnification issue[] prior to any liability determination." *Hanson*, 2018 WL 1513632, at *23; *see also* City Defs.' Br. 23 ("[B]ecause no judgment has been entered and no settlement has been reached, the City cannot, and has not, made a final determination regarding indemnification for defendant Llano, and the issue will have to be addressed again at the close of litigation."). Thus, the City will only have to become involved in this litigation if and when it has to make an indemnification decision, and its

involvement will be the same regardless of the venue where Officer Llano can then challenge its decision. Accordingly, the City is not prejudiced by remaining a party to this action, and I find it appropriate to retain supplemental jurisdiction over Officer Llano's indemnification claim. *See also Musso*, 2010 WL 11530907, at *4 (finding that "judicial economy, convenience, and fairness justify the exercise of supplemental jurisdiction" over the defendant officer's indemnification claim, in part because the indemnification claim was "closely related to the events giving rise to [plaintiff's] underlying action"); *Hogan v. City of New York*, No. 04-CV-3298 (JFB)(SMG), 2008 WL 189891, at *3 n.3. (E.D.N.Y. Jan. 18, 2008) ("[G]iven that this Court has the underlying civil action that gives rise to the indemnification issue, the Court concludes that, at this juncture, it will retain supplemental jurisdiction over the cross-claim against the City for reasons of judicial economy, convenience, and fairness.").

## CONCLUSION

For the reasons stated in this opinion, McLeod's claims against Officer Prinston, Lieutenant Madhu, and the City are dismissed.[7] McLeod's excessive force claim against Officer Llano, as well as Officer Llano's related third-party indemnification claim against the City, remain.

SO ORDERED.

                                                                                /s/_____
                                                        Allyne R. Ross
                                                        United States District Judge

Dated:    March 12, 2019
             Brooklyn, New York

---

[7] These claims are dismissed with prejudice, as my October 17, 2018 Order made clear that plaintiff's SAC would be his last and best complaint. *See* Oct. 17, 2018 Order ("Based on counsel's representations in plaintiff McLeod's October 15th letter, the court understands that plaintiff['s first amended complaint is] his last and best complaint. If he wishes to further amend his complaint, he is granted leave to file a second amended complaint.").