# WORTH, LONGWORTH & LONDON, LLP

## ATTORNEYS AND COUNSELLORS AT LAW

111 JOHN STREET, SUITE 640
NEW YORK, N.Y. 10038
TELEPHONE: (212) 964-8038
FACSIMILE: (212) 964-8164

October 9, 2020

**VIA ECF**

Hon. Allyne R. Ross
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   <u>Malik McLeod v. Yahaira Llano et, al.,</u>
>       17-CV-6062 (ARR)(SMG)

Your Honor,

My firm represents Defendant New York City Police Officer Yahaira Llano ("Officer Llano") in the above-referenced matter.  I write pursuant to Your Honor's Order dated September 22nd, 2020, to respectfully submit, (1) a detailed description of witness testimony; (2) set out Officer Llano's position on all disputed documents; and (3) address the potential testimony of Sgt. Madhu.

## WITNESS TESTIMONY

### Officer Llano

Officer Llano will testify that on April 13th, 2015, she was doing foot patrol, in uniform, in the 75th precinct.  Officer Jean Prinston was her partner for the tour which spanned from 5:30 pm to 2:05 am the following day.  The location of the incident, 272 Pennsylvania Avenue in Brooklyn, was part of her post that evening, and she was familiar with the location.  She will describe that the location has two residential buildings with a private, outdoor, locked (to vehicles not pedestrians) parking lot that is shared by the two buildings.  Officer Llano will testify that when she turned a corner in the vicinity of 272 Pennsylvania Avenue, she observed Plaintiff yanking at the handles of a vehicle.  Plaintiff appeared startled to see the Officers when he first observed them.  Officer Llano made eye contact with Plaintiff and he mentioned something about AAA but Officer Llano does not recall details of the exact conversation.  Plaintiff walked away.  As he was walking away Officer Llano and her partner began looking inside the car.  Officer Prinston observed a female purse and mentioned it to her.  This raised Officer Llano's suspicion.  Officer Prinston called Plaintiff back over.  At that moment, Officer Llano recalled that there was an EMS station right across the street from 272 Pennsylvania

Avenue and that numerous EMT's had recently complained to Officers that their vehicles were being broken into, windows being broken, and items being stolen from inside.

The Officers began questioning Plaintiff in regard to the car but Officer Llano does not recall the specifics of the conversation except her feeling that things didn't add up. The officers did ask him if he was trying to break into the car. As they continued questioning Plaintiff, he started to be come more agitated. At some point Officer Llano told Plaintiff to call his mother-in-law to verify that the car belonged to her, but Plaintiff did not because his phone was not working. During this conversation, Officers Llano and Prinston were positioned in a triangle in relation to the Plaintiff who was in front of them. Plaintiff started to walk away by taking a couple steps to his left in the direction of Officer Prinston. Officer Llano thought he was trying to walk away from the officers. Officer Prinston stepped in front of Plaintiff to cut him off. Plaintiff stepped back one step and was getting angrier. Officer Llano was concerned that Plaintiff was going to try to get away from the Officers again even if it meant pushing her out of the way. At that moment Officer Llano put her hand on Plaintiff's shoulder and told him "stay right there, try to get us your ID, lets try to call your mom to verify who you are. At that point Plaintiff turned towards Officer Llano, and came towards her quickly. Officer Llano pushed Plaintiff away but he came back closer to her. Officer Llano feared at that moment that she was going to be struck by Plaintiff. In her defense, Officer Llano struck Plaintiff once. Plaintiff was not injured and never complained of being injured. Plaintiff was handcuffed and brought back to the precinct. Officer Llano brought him before the desk. She advised the desk sergeant that she had struck Plaintiff and that force was used during the arrest.

## Officer Prinston

Office Prinston will testify that at approximately 9:00 pm on the date of the incident he was on patrol, in uniform, working with Officer Llano as his partner. When he came around a corner near 272 Pennsylvania Avenue in Brooklyn, he observed Plaintiff trying to force open the driver's side door of a vehicle and observed Plaintiff looking inside. Officer Prinston had previously been advised by two civilians and EMS workers that park in that area that their cars had been being broken into at night. Officer Prinston approached Plaintiff and Plaintiff asked the Officers if they could open the door for him. Officer Prinston asked Plaintiff if he had ID and who the car belonged to. Plaintiff indicated that he did not have ID and that the car belonged to his mother. Officer Prinston told Plaintiff they would not be able to help him open the car. Plaintiff began to walk away. Officer Prinston looked inside the car and noticed a purse, and a smaller purse with credit cards which made him become suspicious. Officer Prinston called Plaintiff back and began to question Plaintiff further about the car and his ID. Officer Prinston will testify that Plaintiff was trying to move away from them as they were talking to them and Officer Prinston blocked his path. Officer Prinston told Plaintiff that he was not under arrest, but that he could not leave and that he would place him in handcuffs if he did not remain at the location. Plaintiff was making a lot of hand gestures during his conversation with the officers and he was getting "excited," at the questioning. Officer Prinston will testify that Officer Llano stuck plaintiff once thereafter.

## DISPUTED EXHIBITS

Upon information and belief, the status of Plaintiff's Exhibits listed in the Joint Pretrial Order are as follows:

| Exhibit # | Description | Admissibility | Basis |
|---|---|---|---|
| 1 | Photographs of location | Admissible | No objection |
| 2 | Surveillance videos | Admissible | No objection |
| 3 | Complaint report | Admissible | No objection |
| 4 | Arrest Report | Admissible | No objection |
| 5 | Complaint Room Screening Sheet | Subject to Motion | Llano Objection |
| 6 | 710.30(1)(b) notice | Subject to Motion | Llano Objection |
| 7 | Criminal Court Complaint | Subject to Motion | Llano Objection |
| 8 | Sprint report | Inadmissible | Plaintiff withdrew |
| 9 | Criminal Court File | Inadmissible | Precluded |
| 10 | Llano memo book | Admissible | No objection |
| 11 | Prinston memo book | Admissible | No objection |
| 12 | Prinston NYPD record | Inadmissible | Plaintiff withdrew |
| 13 | Llano NYPD record | Inadmissible | Plaintiff withdrew |
| 14 | Patrol Guide 203-11 | Inadmissible | Precluded |
| 15 | Patrol Guide 212-11 | Inadmissible | Precluded |
| 16 | Departmental Report & Findings | Inadmissible | Precluded |
| 17 | Disposition of Charges | Inadmissible | Precluded |
| 18-23 | Various prior Statements | Admissible (Sanitized) | Impeachment |

As such, upon information and belief, Plaintiff will address Exhibits 5-7 in his motion which Office Llano will address in her opposition.

Upon information and belief, the status of Officer Llano's Exhibits listed in the Joint Pretrial Order are as follows:

| Exhibit | Description | Admissibility | Basis |
|---|---|---|---|
| A-D | Surveillance Footage | Admissible | No Objection |
| E&F | Memo Books | Admissible | No Objection |
| G | Certificate of Disposition | Inadmissible | Precluded |
| H | Command Log | Admissible (Subject to explanation) | Not precluded |

| I | Allocution | Inadmissible | Precluded |
| J | Scratch Copy | Subject to motion [1] | Originally |
|  | Of Arrest Report |  | withdrawn |
| K | DAT investigation | Inadmissible | Precluded |
| L | Warrant | Inadmissible | Precluded |
| M | Warrant | Inadmissible | Precluded |
| N-X | Various prior | Admissible | Impeachment |
|  | Statements | (Sanitized) |  |

As such, Officer Llano will address the outstanding questions about Exhibit H, the Command Log, and Exhibit J, the scratch copy of the Arrest Report.

## Llano Exhibit H-- Command Log

In the Joint Pretrial Order, Officer Llano sought to admit the command log entry for Plaintiff's arrest. Plaintiff objected arguing that the Command Log was not relevant. "Under Federal Rule of Evidence 401, "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence." Haynes v. Acquino, 692 F. App'x 670, 671 (2d Cir. 2017), citing Fed. R. Evid. 401. "[T]he definition of relevance under Fed. R. Evid. 401 is very broad." Id. citing United States v. Certified Envtl. Servs., Inc., 753 F.3d 72, 90 (2d Cir. 2014). "Unless an exception applies, all 'relevant evidence is admissible.'" Id. quoting United States v. White, 692 F.3d 235, 246 (2d Cir. 2012).

An NYPD command log is a book, kept at the desk and filled out by the Desk Sergeant, which functions as a precinct diary. When an officer makes an arrest and transports a prisoner into a police precinct, NYPD procedure dictates that the Officer and the arrestee appear before the desk so that certain entries can be made in the command log. A Command Log entry for an arrest will contain information such as the name of the arrestee, the name of the arresting officer, and the time and location of the arrest. Most importantly here, the Command Log reflects whether the arresting officer told the Desk Sergeant he/she used force during the arrest, and the Desk Sergeant's impression of the physical/mental condition of the arrestee as they stand before them at the desk.

Here, the Command Log entry indicates that Officer Llano advised the Desk Sgt. that she used force during the arrest, and that the Desk Sgt.'s perception of Plaintiff's physical condition was normal. These two portions of the Command Log are clearly relevant under Rule 401. First, the fact that Officer Llano told Desk Sergeant that she used force, tends to make Plaintiff's argument that she tried to downplay or hide the force less likely than it does without the admission of the Command Log. Furthermore, the notation "apparently normal," in reference to Plaintiff's condition amounts to a present sense impression by the Desk Sergeant which has a tendency to prove that it is less likely that Plaintiff was injured by Officer Llano's use of force. As such, the Command Log is relevant and therefore admissible under FRE 401 and 402.

---

[1] During a conversation at pretrial conference about the necessity of Exhibit J, the scratch copy of the arrest report, the undersigned agreed that it was not necessary. For the reasons set forth below, we respectfully request that the Court allow the admissibility of Exhibit J

Defendant Llano intends to call Sgt. Madhu as a witness since he was the Sergeant who, upon information and belief, made the command log entries.  He will be called to testify to explain what he meant when he noted in the command log that Plaintiff's physical/mental condition was "apparently normal."

**Llano Exhibit J -- Scratch Copy of Arrest Report**

During the telephone conference on September 16th, 2020, Your Honor inquired about the necessity for admission of Officer Llano's Exhibit J, which is the scratch, or handwritten, copy. of the Arrest Report, since Plaintiff had listed the online copy as an Exhibit.  We had agreed that it would not be necessary to also admit the scratch copy, assuming that the two documents were duplicative.  Upon further review, for the reasons set forth below, we respectfully request that Officer Llano be able to admit the handwritten copy of the arrest report Exhibit J.

Officer Llano will testify that she undertook her typical procedure for filling out arrest reports, as is standard operating procedure for NYPD officers, by first completing the handwritten scratch copy of the Arrest Report before moving to a computer and transfer the information the online form.  On the Arrest Report there is a box where the officer is required to indicate whether force was used during the arrest.  On the scratch copy Officer Llano checked the box for "Yes" indicating that she used force during the arrest.  Officer Llano made an error when she transferred the information to the online arrest report.  In the NYPD online system, the default setting for the "force used," box on the Arrest Report is "None."  So if an officer accidentally skips over the box while attempting to transfer the information from the scratch copy, the final Arrest Report will reflect that the Officer claims no force was used.  Officer Llano made that mistake in the case here.  As such, it is respectfully submitted that the scratch copy of the Arrest Report is required to explain this inconsistency to the jury and rebut any presumption that Officer Llano was trying to downplay her use of force.  Based on the foregoing, and the fact that Plaintiff did not object to Exhibit J in the Joint Pretrial Order, Officer Llano respectfully request that Exhibit J be admitted.

We thank the Court for its time and consideration of this matter.

Respectfully Submitted,


_____/s/_____
Douglas LaBarbera (DL 3880)


CC:    **VIA ECF**

       *All Parties*